UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 4:25CR248 JAR/SRW |
| | ) |
| BRIAN K. DITCH, | ) |
| | ) |
| Defendant. | ) |

FILED
MAY - 7 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

## INDICTMENT

The Grand Jury charges that, at times relevant to this Indictment:

### INTRODUCTION

1. For over a decade, Defendant Brian K. Ditch regularly abused and imprisoned his uncle—a quadriplegic Army veteran ("Veteran T.C.")—in order to steal his government disability benefits. After years of exploitation, neglect, and internment at the hands of the defendant, Veteran T.C. died while he was in the exclusive custody of the defendant. To continue his fraud scheme, Defendant Ditch concealed Veteran T.C.'s death—for at least five years—including by wrapping Veteran T.C.'s dead body up in a trash bag and stuffing him into a garbage can. Through his lies and acts of concealment, the defendant stole hundreds of thousands of dollars in Veteran T.C.'s disability benefits that the defendant used—not to care for his quadriplegic uncle—but to enrich himself personally.

### BACKGROUND

**I.    Department of Veterans Affairs Disability Compensation**

2. The Department of Veterans Affairs ("VA") has a Disability Compensation program, which offers a benefit that is paid directly to veterans who have been injured during their active-duty military service. More specifically, the VA's Disability Compensation program pays

a tax-free monetary benefit to veterans with disabilities that are the result of a disease or injury incurred or aggravated during active-duty military service. The VA rates the level of service-connected disability of veterans on a scale of 0% to 100%, depending on the severity of the veteran's disability. In calculating the rating, the VA considers the average detriment to a veteran's earning capacity caused by each disability a veteran claimed. The amount of disability compensation a veteran receives is commensurate with their service-connected disability rating.

3. The VA rated Veteran T.C. as having a 100% service-connected disability based on his dementia and his inability to control his bowels or use his hands and feet. Under the VA's Disability Compensation Program, the VA made monthly, electronic payments directly to Veteran T.C.'s bank account (First State Community Bank account # ending in 6881). As of 2024, the VA was making monthly payments to that account in the amount of $9,559.22 every month (totaling $114,710.64 per year). The purpose of these disability benefit payments was to provide care and medical treatment for Veteran T.C.

4. Since 2008, the VA's Disability Compensation program deposited approximately $1,643,291.39 into Veteran T.C.'s bank account. Had the VA known that Defendant Ditch was stealing Veteran T.C.'s benefits—or that Veteran T.C. had died—the VA would have immediately discontinued Veteran T.C.'s Disability Compensation payments.

## II. The Social Security Administration Disability and Retirement Insurance Benefit Programs

5. The Social Security Administration ("SSA") is a federal agency that administers the Old Age, Survivor's and Disability Insurance ("OASDI") program. Through this program, SSA offers Social Security Disability Insurance Benefits ("DIB"), which are monthly payments SSA awarded when an individual met certain medical and non-medical requirements. DIB payments replaced part of an individual's earnings lost due to a physical or mental impairments.

6.      The SSA also offers a Retirement Insurance Benefits ("RIB") program, which is a government-run benefits program intended to replace part of the earnings lost because of a worker's retirement. Under the RIB program, the SSA distributes benefits to eligible persons 62 years of age or older.

7.      Since 2008, the above-referenced SSA programs deposited approximately $235,210.00 into Veteran T.C.'s bank account. Had the SSA known that Defendant Ditch was stealing Veteran T.C.'s benefits—or that Veteran T.C. had died—the SSA would have immediately discontinued Veteran T.C.'s benefit payments.

## COUNTS ONE–FOUR
### (Wire Fraud: 18 U.S.C. § 1343)

8.      Each of the above allegations is hereby incorporated by reference as if fully set forth herein.

**I.     Defendant Ditch's Scheme to Defraud**

9.      Beginning by at least in or about January 2008, and continuing through at least in or about May 2025, in the Eastern District of Missouri, and elsewhere, the defendant,

**BRIAN K. DITCH**,

with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the Social Security Administration and the Department of Veterans Affairs and to obtain money and property from the Social Security Administration and the Department of Veterans Affairs by means of material false and fraudulent pretenses, representations, and promises, as described further herein. Defendant Ditch undertook the actions detailed below as part of his scheme and artifice to defraud.

10.     Between at least in or about 2008 and at least in or about 2019, Defendant Ditch frequently imprisoned and abused Veteran T.C. as part of his scheme to steal the above-referenced VA and SSA benefit payments. During this period, Defendant Ditch was solely responsible for

3

providing care to Veteran T.C., who was a quadriplegic Army veteran. Instead of using Veteran T.C.'s disability benefits to properly care for him, the defendant often trapped him in a garage for over 24 hours at a time, where he was forced to sit in his own urine and feces without the ability to eat or drink. By keeping Veteran T.C. locked away, abused, and under his control, Defendant Ditch was able to fraudulently obtain Veteran T.C.'s disability benefits.

11. In order to obtain and spend Veteran T.C.'s disability benefits, Defendant Ditch fraudulently gained access to and maintained unauthorized control over Veteran T.C.'s bank account (First State Community Bank account # ending in 6881), on which Veteran T.C. was the only living authorized signer. Defendant Ditch was not authorized to make withdrawals from—or even to access—Veteran T.C.'s bank account. The VA wired—via interstate wirings—Veteran T.C.'s disability benefit payments into that account, and Defendant Ditch also funneled Veteran T.C.'s SSA benefits into that account as well. Without any authority to access Veteran T.C.'s bank account, Defendant Ditch fraudulently used Veteran T.C.'s login information—falsely representing that he was Veteran T.C.—to access the account and then steal Veteran T.C.'s disability benefits.

12. To further disguise his theft of Veteran T.C.'s disability benefits, Defendant Ditch would regularly wire $1,000.00 payments from Veteran T.C.'s First State Community Bank account (account # ending in 6881) to the defendant's Bank of Missouri account (account # ending in 2498). Defendant Ditch ordered these electronic payments from Veteran T.C.'s bank account—while pretending to be Veteran T.C.—in order to make it appear as though the defendant was receiving a regular paycheck for his caretaking duties. In reality, however, Defendant Ditch was

not providing Veteran T.C. with proper care, and Veteran T.C. did not authorize or approve the payments to Defendant Ditch.

13. In furtherance of his scheme to defraud, Defendant Ditch also actively concealed material information from the VA and SSA. To ensure that he could continue stealing Veteran T.C.'s disability benefits while he was still living, Defendant Ditch concealed from the VA, SSA, and his family that the defendant was keeping Veteran T.C. in squalid conditions and depriving him of his disability benefits. After years of being locked away and abused by Defendant Ditch, Veteran T.C. died in or about 2019. To continue stealing Veteran T.C.'s disability benefits after his death, Defendant Ditch concealed from the VA, SSA, and his family Veteran T.C.'s body and the fact of his death.

14. Additionally, Defendant Ditch made false representations about Veteran T.C.'s whereabouts in furtherance of his fraud scheme. After Veteran T.C.'s death, Defendant Ditch told lies to family members that he moved Veteran T.C. into a nursing home. Not only did the defendant make false representations to family members in furtherance of his fraud scheme, but he also lied to law enforcement officers to conceal and perpetrate his fraud. For example, on or about March 7, 2025, Defendant Ditch made false statements to Salem, Missouri police officers about Veteran T.C.'s whereabouts in furtherance of his fraud scheme. On or about that date, in order to continue stealing Veteran T.C.'s disability benefits, Defendant Ditch falsely told police officers that Veteran T.C. left his residence years ago with another caretaker.

15. In truth and fact, however, as Defendant Ditch knew full well, Veteran T.C. did not leave his residence years ago with another caretaker. Instead, Defendant Ditch hid Veteran T.C.'s dead body in a shed behind his residence. Police officers found Veteran T.C.'s partially frozen dead body wrapped in a black trash bag and stuffed inside a garbage can in the defendant's shed during the execution of a search warrant on or about March 21, 2025. During the execution of that

same search warrant, police officers also discovered exotic reptiles that Defendant Ditch purchased with proceeds of his fraud scheme along with the following firearms that Defendant Ditch possessed: (1) a Mossberg Model 3090 KB, 16 gauge shotgun, serial number: 1106B; (2) a Springfield 20 gauge shotgun, serial number P976310, and (3) a New England Firearms Pardner Model SB1 20 gauge shotgun, serial number NH395081.

16. Between in or about January 2019 and in or about March 2025, after Veteran T.C.'s death, Defendant Ditch stole at least $650,000 in government benefits through his scheme to defraud. Defendant Ditch used the stolen funds to purchase exotic reptiles, fund lavish vacations, and enrich himself personally.

## II. Wire Transmissions

17. On or about the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**BRIAN K. DITCH,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 1/31/2025 | The Department of Veterans Affairs wiring of $9,559.22 into Veteran T.C.'s bank account (First State Community Bank account # ending in 6881) |
| 2 | 2/28/2025 | The Department of Veterans Affairs wiring of $9,559.22 into Veteran T.C.'s bank account (First State Community Bank account # ending in 6881) |
| 3 | 2/3/2025 | The Social Security Administration's wiring of $1,427.00 into Veteran T.C.'s bank account (First State Community Bank account # ending in 9705) |

| | | |
|---|---|---|
| 4 | 3/3/2025 | The Social Security Administration's wiring of $1,427.00 into Veteran T.C.'s bank account (First State Community Bank account # ending in 9705) |

All in violation of Title 18, United States Code, Section 1343.

## COUNT FIVE–EIGHT
### (Aggravated Identity Theft: 18 U.S.C. § 1028A)

18. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

19. On or about the dates set forth below, in the Eastern District of Missouri, the defendant,

**BRIAN K. DITCH,**

did knowingly use, without lawful authority, a means of identification of another person, to wit, Veteran T.C.'s bank account number, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud, in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person, to wit:

| Count | Date | Description |
|---|---|---|
| 5 | 1/31/2025 | Defendant Ditch used Veteran T.C.'s bank account number (First State Community Bank account # ending in 6881) to wire Veteran T.C.'s benefit payments (in the amount of $1,000.00) to Defendant Ditch's Bank of Missouri account (account number ending in 2498) |
| 6 | 2/28/2025 | Defendant Ditch used Veteran T.C.'s bank account number (First State Community Bank account # ending in 6881) to wire Veteran T.C.'s benefit payments (in the amount of $1,000.00) to Defendant Ditch's Bank of Missouri account (account number ending in 2498) |
| 7 | 2/3/2025 | Defendant Ditch used Veteran T.C.'s bank account number (First State Community Bank account # ending in 6881) to wire Veteran T.C.'s benefit payments (in the amount of $1,000.00) to Defendant Ditch's Bank of Missouri account (account number ending in 2498) |
| 8 | 3/3/2025 | Defendant Ditch used Veteran T.C.'s bank account number (First State Community Bank account # ending in 6881) to wire Veteran T.C.'s benefit payments (in the amount of $1,000.00) to Defendant Ditch's Bank of Missouri account (account number ending in 2498) |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT NINE
### (Theft of Government Property: 18 U.S.C. § 641)

20. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

21. From at least in or about January 2019, and continuing until in or about March 2025, in the Eastern District of Missouri, the defendant,

**BRIAN K. DITCH,**

in a continuing course of conduct, willfully and knowingly did steal, purloin, and convert to his own use, and without authority dispose of property of the United States exceeding $1,000 in value belonging to the Department of Veteran's Affairs, an agency of the United States, to wit: the VA's Disability Compensation program benefits in the amount of approximately $632,877, in violation of Title 18, Section 641, United States Code.

## COUNT TEN
### (Theft of Government Property: 18 U.S.C. § 641)

22. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

23. From at least in or about January 2019, and continuing until in or about March 2025, in the Eastern District of Missouri, the defendant,

**BRIAN K. DITCH,**

in a continuing course of conduct, willfully and knowingly did steal, purloin, and convert to his own use, and without authority dispose of property of the United States exceeding $1,000 in value belonging to the Social Security Administration, an agency of the United States, to wit: SSA benefits in the amount of approximately $94,018.00, in violation of Title 18, Section 641, United States Code.

## COUNT ELEVEN
## (Possession of a Firearm by a Convicted Felon: 18 U.S.C. § 922(g)(1))

24. Each of the allegations in this Indictment is hereby incorporated by reference as if fully set forth herein.

25. On or about March 21, 2025, in the Eastern District of Missouri, the defendant,

**BRIAN K. DITCH,**

knowingly possessed one or more firearms, knowing he had previously been convicted in a court of law of one or more crimes punishable by a term of imprisonment exceeding one year, and the firearm previously traveled in interstate or foreign commerce during or prior to being in the defendant's possession, in violation of Title 18, Section 922(g), United States Code.

## FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of Wire Fraud, as set forth in Counts One through Four, Defendant Ditch shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

2. Pursuant to Title 18, United States Code, Section 924(d)(l) and Title 28, United States Code, Section 2461 (c), upon conviction of an offense in violation of Title 18, United States Code, Section 922(g) as set forth above, the defendant shall forfeit to the United States of America any firearm or ammunition involved in or used in said violation(s).

3. If any of the property described above, as a result of any act or omission of Defendant Ditch:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney