UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:25-cr-00248-ZMB |
| ) | |
| ) | |
| BRIAN K. DITCH, ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are Defendant Brian K. Ditch, ("the Defendant"), represented by defense counsel Kevin B. Gau, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Counts 1 through 5 and Count 11 of the Indictment, the United States agrees to dismiss the remaining counts in the Indictment (*i.e.*, Counts 6 through 10) at the time of sentencing. In addition, the United States agrees that no further federal criminal prosecutions will be brought in this District relative to the Defendant's wire fraud scheme and

1

possession of firearms, which are charged in the Indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, at the time of sentencing, the United States will request a sentence within the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court, pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The defendant may request any sentence authorized by law.

## 3. ELEMENTS:

As to Counts 1 through 4, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant voluntarily and intentionally devised or participated in the scheme to defraud described in the indictment to obtain money by means of material false representations or promises;

**Two**, the defendant did so with the intent to defraud; and

**Three**, the defendant caused to be used an interstate wire communication in furtherance of, or in attempt to carry out, some essential step of the scheme to defraud charged in the Indictment.

As to Count 5, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly used Veteran T.C.'s bank account number;

**Two**, the defendant knew that Veteran T.C.'s bank account number, which the defendant used, belonged to another person;

**Three**, the defendant used Veteran T.C.'s bank account number without lawful authority;

**Four**, the defendant knew that he used Veteran T.C.'s bank account number without authority; and

**Five**, the defendant used Veteran T.C.'s bank account number during and in relation to the crime of wire fraud.

As to Count 11, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant had been convicted of a crime punishable by imprisonment for more than one year;

**Two**, after that, the defendant knowingly possessed firearms, that is: a Mossberg Model 3090 KB, 16 gauge shotgun, serial number: 1106B; a Springfield 20 gauge shotgun, serial number P976310, and a New England Firearms Pardner Model SBI 20 gauge shotgun, serial number NH395081.

**Three**, at the time the defendant knowingly possessed the firearms, he knew that he had been convicted of a crime punishable by imprisonment for more than one year; and

**Four**, the firearms were transported across a state line at some time during or before the defendant's possession of the firearms.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning by at least January 2008, and continuing through at least May 2025, in the Eastern District of Missouri, Defendant Brian K. Ditch, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the Social Security Administration and the Department of Veterans Affairs and to obtain money and property from the Social Security Administration and the Department of Veterans Affairs by means of material false and fraudulent pretenses, representations, and promises, as described further herein. Defendant Ditch undertook the actions detailed below as part of his scheme and artifice to defraud.

Between at least 2008 and at least 2019, Defendant Ditch was solely responsible for providing care to Veteran T.C., who was a quadriplegic Army veteran. Instead of using all of Veteran T.C.'s disability benefits to properly care for him, the defendant subjected Veteran T.C. to insufficient care and verbal abuse. By keeping Veteran T.C. locked away, Defendant Ditch was able to fraudulently obtain Veteran T.C.'s disability benefits.

In order to obtain and spend Veteran T.C.'s disability benefits, Defendant Ditch fraudulently gained access to and maintained unauthorized control over Veteran T.C.'s bank account (First State Community Bank account # ending in 6881), on which Veteran T.C. was the only living authorized signer. Defendant Ditch was not authorized to make withdrawals from—or

4

even to access—Veteran T.C.'s bank account. The VA wired—via interstate wirings—Veteran T.C.'s disability benefit payments into that account, and Defendant Ditch also funneled Veteran T.C.'s SSA benefits into that account as well. Without any authority to access Veteran T.C.'s bank account, Defendant Ditch fraudulently used Veteran T.C.'s login information—falsely representing that he was Veteran T.C.—to access the account and then steal Veteran T.C.'s disability benefits.

To further disguise his theft of Veteran T.C.'s disability benefits, Defendant Ditch would regularly wire $1,000.00 payments from Veteran T.C.'s First State Community Bank account (account # ending in 6881) to the defendant's Bank of Missouri account (account # ending in 2498). Defendant Ditch ordered these electronic payments from Veteran T.C.'s bank account—using Veteran T.C. credentials—in order to make it appear as though the defendant was receiving a regular paycheck for his caretaking duties. In reality, however, Defendant Ditch was not providing Veteran T.C. with proper care, and Veteran T.C. did not authorize or approve the payments to Defendant Ditch.

In furtherance of his scheme to defraud, Defendant Ditch also actively concealed material information from the VA and SSA. To ensure that he could continue stealing Veteran T.C.'s disability benefits while he was still living, Defendant Ditch concealed from the VA and the SSA that the defendant was depriving Veteran T.C. of his benefits.

Veteran T.C. died in or about 2019. To continue stealing Veteran T.C.'s disability benefits after his death, Defendant Ditch concealed from the VA, SSA, and his family Veteran T.C.'s body and the fact of his death. Additionally, Defendant Ditch made false representations about Veteran T.C.'s whereabouts in furtherance of his fraud scheme. After Veteran T.C.'s death, Defendant

Ditch told lies to family members that he moved Veteran T.C. into a nursing home. Not only did the defendant make false representations to family members in furtherance of his fraud scheme, but he also lied to law enforcement officers to conceal and perpetrate his fraud. For example, on or about March 7, 2025, Defendant Ditch made false statements to Salem, Missouri police officers about Veteran T.C.'s whereabouts in furtherance of his fraud scheme. On or about that date, in order to continue stealing Veteran T.C.'s disability benefits, Defendant Ditch falsely told police officers that Veteran T.C. left his residence years ago with another caretaker.

In truth and fact, however, as Defendant Ditch knew full well, Veteran T.C. did not leave his residence years ago with another caretaker. Instead, Defendant Ditch hid Veteran T.C.'s dead body in a shed behind his residence. Police officers found Veteran T.C.'s partially frozen dead body wrapped in a black trash bag and stuffed inside a garbage can in the defendant's shed during the execution of a search warrant on or about March 21, 2025. During the execution of that same search warrant, police officers also discovered exotic reptiles that Defendant Ditch purchased with proceeds of his fraud scheme along with the following firearms that Defendant Ditch possessed: (1) a Mossberg Model 3090 KB, 16 gauge shotgun, serial number: 1106B; (2) a Springfield 20 gauge shotgun, serial number P976310, and (3) a New England Firearms Pardner Model SBI 20 gauge shotgun, serial number NH395081.

Since 2008, the VA's Disability Compensation program deposited approximately $1,643,291.39 into Veteran T.C.'s bank account. Had the VA known that Defendant Ditch was

6

stealing Veteran T.C. 's benefits, or that Veteran T.C. had died, the VA would have immediately discontinued Veteran T.C.'s Disability Compensation payments.

Since 2008, the above-referenced SSA programs deposited approximately $235,210.00 into Veteran T.C.'s bank account. Had the SSA known that Defendant Ditch was stealing Veteran T.C.'s benefits, or that Veteran T.C. had died, the SSA would have immediately discontinued Veteran T.C.'s benefit payments.

On the dates set forth below, within the Eastern District of Missouri, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same, Defendant Ditch did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, to wit:

| Count | Date | Wire Description |
|---|---|---|
| 1 | 1/31/2025 | The Department of Veterans Affairs wiring of $9,559.22 into Veteran T.C.'s bank account (First State Community Bank account # ending in 6881) |
| 2 | 2/28/2025 | The Department of Veterans Affairs wiring of $9,559.22 into Veteran T.C.'s bank account (First State Community Bank account # ending in 6881) |
| 3 | 2/3/2025 | The Social Security Administration's wiring of $1,427.00 into Veteran T.C.'s bank account (First State Community Bank account # ending in 9705) |
| 4 | 3/3/2025 | The Social Security Administration's wiring of $1,427.00 into Veteran T.C.'s bank account (First State Community Bank account # ending in 9705) |

In addition, on January 31, 2025, Defendant Ditch did knowingly use, without lawful authority, a means of identification of another person, to wit, Veteran T.C.'s bank account number, during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud,

7

in violation of 18 U.S.C. § 1343, knowing that the means of identification belonged to another actual person, to wit:

| Count | Date | Description |
|---|---|---|
| 5 | 1/31/2025 | Defendant Ditch used Veteran T.C.'s bank account number (First State Community Bank account # ending in 6881) to wire Veteran T.C.'s benefit payments (in the amount of $1,000.00) to Defendant Ditch's Bank of Missouri account (account number ending in 2498) |

On March 21, 2025, in the Eastern District of Missouri, Defendant Ditch knowingly possessed one or more firearms, to wit (1) a Mossberg Model 3090 KB, 16 gauge shotgun, serial number: 1106B; (2) a Springfield 20 gauge shotgun, serial number P976310, and (3) a New England Firearms Pardner Model SBI 20 gauge shotgun, serial number NH395081, knowing he had previously been convicted in a court of law of one or more crimes punishable by a term of imprisonment exceeding one year, and the firearm previously traveled in interstate or foreign commerce during or prior to being in the defendant's possession.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, as to Counts 1 through 4, is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, as to Count 5, is imprisonment of 2 years to be run consecutive to Counts 1 through 4, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 1 year.

8

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty, as to Count 11, is imprisonment of not more than 15 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 3 years.

6. <u>**U.S. SENTENCING GUIDELINES: 2024 MANUAL**</u>:

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

For Count 5, the parties agree that the guideline sentence is the term of imprisonment required by statute, under Section 2B1.6(a), which is a term of imprisonment of 24 months to run consecutive to the sentences imposed for Counts 1 through 4.

a. <u>**Chapter 2 Offense Conduct**</u>:

(1) <u>**Base Offense Level**</u>:

As to Counts 1 through 4, the parties agree that the base offense level is **7**, as found in Section 2B1.1(a).

As to Count 11, the parties agree that the base offense level is **14**, as found in Section 2K1.1(a)(7).

(2) <u>**Specific Offense Characteristics**</u>: The parties agree that the following Specific Offense Characteristics apply:

**As to Counts 1 through 4, the parties have the following agreements:**

9

- The parties agree that Defendant's offense level should be increased by **16 levels** under Section 2B1.1(b)(1)(I), because the loss amount was more than $1,500,000 but less than $3,500,000.

- The parties agree that **2 levels** should be added pursuant to Section 2B1.1(b)(2)(A) because the offense resulted in substantial financial hardship to Veteran T.C.

- The parties agree that **2 levels** should be added pursuant to Section 2B1.1(b)(16) because the admitted facts support the application of this enhancement.

**As to Count 11, the parties have the following agreements:**

- The parties agree that **2 levels** should be added pursuant to Section 2K2.1(b)(1)(A) because the offense involved three firearms.

**b. Chapter 3 Adjustments:**

(1) **Acceptance of Responsibility:** The parties agree that **3 levels** should be deducted pursuant to Section 3E1.1(a) and (b), because the Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the Defendant's intention to plead guilty. The parties agree that the Defendant's eligibility for this deduction is based upon information presently known. If, subsequent to the taking of the guilty plea, the Government receives new evidence of statements or conduct by the Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the Court, and argue that the Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**As to Counts 1 through 4, the parties have the following agreements:**

10

- The parties agree that **2 levels** should be added pursuant to Section 3A1.1 because the defendant knew that Veteran T.C. was a vulnerable victim.

- The parties agree that **2 levels** should be added pursuant to Section 3C1.1 because the defendant obstructed justice by making false statements to Salem, Missouri police officers.

   c. **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

   d. **Estimated Total Offense Level:** As to Counts 1 through 4, the parties estimate that the total offense level is **28**. If the presentence investigation report determines a different total offense level, the parties are permitted to object to or accept any enhancements or reductions in the presentence investigation report.

   e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the findings of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

   f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

**a. Appeal:** The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which Defendant is pleading guilty and whether the Defendant's conduct falls within the scope of the statute(s).

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

12

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

a. **Disclosures Required by the United States Probation Office:** The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

c. **Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

d. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any

13

restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   e. **Possibility of Detention:** The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

   f. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The Defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The Defendant agrees to provide full restitution to all victims of all charges in the Indictment. The parties agree that the restitution amount in this case is $1,878,501.39. Defendant agrees to pay that amount in full.

   g. **Forfeiture:** The defendant agrees to the forfeiture set forth in the Forfeiture Allegation in the Superseding Indictment to which the Defendant is pleading guilty.

   The Defendant also agrees to the entry of a forfeiture money judgment in the amount of restitution determined by the court at sentencing. The Defendant further agrees that the proffer of evidence supporting this guilty plea is sufficient evidence to support such forfeiture.

   The Defendant agrees that the Court may enter a consent preliminary order of forfeiture at the time of his guilty plea or at any time before sentencing. The Defendant further agrees that this

14

order will become final as to the Defendant when it is issued and will be part of his sentence pursuant to Fed. R. Crim. P. 32.2(b)(4)(A).

The Defendant agrees that the Government may choose in its sole discretion how it wishes to accomplish forfeiture, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes. The Defendant waives all rights to assert any interest in the forfeited property in the future, and will withdraw any prior claims made to forfeited property, whether they were made in a judicial or non-judicial forfeiture process.

The Defendant agrees (i) to assist the Government in identifying all property that is subject to forfeiture, (ii) to take any and all actions necessary to transfer title and ownership of said property to the Government, and (iii) to help the Government to rebut the claims of nominees and/or alleged third party owners, including by testifying truthfully in any judicial forfeiture proceeding.

The Defendant knowingly and intelligently waives all constitutional and statutory challenges in any manner to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant further knowingly and intelligently waives any rights the Defendant may have (i) for notice of the forfeiture to be given in the charging instrument, (ii) for a jury or the Court to determine what property is subject to forfeiture, (iii) for the Court to explain the forfeiture at the Defendant's change of plea hearing, and (iv) for the forfeiture to be made part of the oral pronouncement of sentence and included in the judgment. Defendant specifically agrees to forfeit the following items: a Mossberg Model 3090 KB, 16 gauge shotgun, serial number: 1106B; a

Springfield 20 gauge shotgun, serial number P976310, and a New England Firearms Pardner Model SBI 20 gauge shotgun, serial number NH395081.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

16

and satisfactorily explored all areas which the Defendant has requested relative to the Government's case and any defenses.

The guilty plea could impact Defendant's immigration status or result in deportation. In particular, if any crime to which Defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the Defendant of the possible immigration consequences, including deportation, resulting from the plea.

### 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

### 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if the Defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

_10-10-25_
Date

Derek Wiseman
Assistant United States Attorney

_10-10-25_
Date

Brian K. Ditch
Defendant

_10/10/25_
Date

Kevin B. Gau
Attorney for Defendant